1
2
3
4
5
6
7
8
9
10

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

**\* \* \***

| | |
|---|---|
| JUANITA A. PITTI, an individual, and GARCILASO GUTIERREZ, an individual, <br><br> Plaintiffs, <br><br> vs. <br><br> ALBERTSONS, LLC, a Nevada Corporation, a/k/a ALBERTSONS, INC., a Nevada Corporation d/b/a SAV-ON PHARMACY, NEW ALBERTSONS, INC., a Delaware Corporation, LAS VEGAS METROPOLITAN POLICE DEPARTMENT, DOES I-X, and ROES I-X, <br><br> Defendants. | Case No.: 2:11-cv-00280-MMD-CWH <br><br> **O R D E R** <br><br> (Motion for Summary Judgment–#38) |

11
12
13
14
15
16
17
18
19
20

        Before the Court is Defendant New Albertsons Inc.'s **Motion for Summary
Judgment** (#38, filed Jan. 10, 2012).  The Court has also considered Plaintiffs Juanita A. Pitti and
Garcilaso Gutierrez's Opposition (#42, filed Mar. 5), and Albertson's Reply (#45, filed Mar. 22).

## BACKGROUND

        This dispute arises from alleged events that occurred at an Albertson's grocery store
when Pitti attempted to purchase prescription medication at the pharmacy.  In December 2008,

21
22
23
24
25
26

1  Pitti went to an Albertson's and requested a prescription be filled at the pharmacy.  The pharmacist

2  called the police on Pitti because she falsely believed that Pitti was attempting to fill a fraudulent

3  prescription.  Metro sent officers to investigate the situation.  After the officers arrived they began

4  questioning Pitti in public near the pharmacy.  Eventually, Pitti was handcuffed and taken to a

5  private room where the officers further questioned her.  Pitti would ultimately be released after the

6  officers discovered that she was not in fact attempting to illegally obtain prescription drugs.

7  Plaintiffs filed suit in Nevada state court in October 2010 and the case was later

8  removed to this Court.  Plaintiffs allege multiple state law tort claims against both Albertson's and

9  Metro, as well as a § 1983 claim against Metro.  The Court then dismissed Plaintiffs' state tort

10  claims against Metro (#27), and Metro and Plaintiffs stipulated to dismiss the § 1983 claim (#44).

11  Albertson's is the only Defendant left in this suit and has now filed a motion for summary

12  judgment as to all of Plaintiffs' claims.  For the reasons discussed below, the Court grants

13  Albertson's motion.

**DISCUSSION**

14

15  **I.      Legal Standard**

16  The purpose of summary judgment is to avoid unnecessary trials when there is no

17  dispute as to the facts before the court.  *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d

18  1468, 1471 (9th Cir.1994).  Summary judgment is appropriate when "the pleadings, the discovery

19  and disclosure materials on file, and any affidavits show there is no genuine dispute as to any

20  material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).

21  An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact-finder

22  could find for the nonmoving party and a dispute is "material" if it could affect the outcome of the

23  suit under the governing law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986).

24  Where reasonable minds could differ on the material facts at issue, however, summary judgment is

25  not appropriate.  *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995).  "The amount of

26  evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to

AO 72
(Rev. 8/82)

1   resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d

2   897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank v. Cities Service Co.*, 391 U.S. 253, 288–89

3   (1968)).  In evaluating a summary judgment motion, a court views all facts and draws all

4   inferences in the light most favorable to the nonmoving party. *Kaiser Cement Corp. v. Fishbach*

5   *& Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

6          The moving party bears the burden of showing that there are no genuine issues of

7   material fact. *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982).  "In order to carry

8   its burden of production, the moving party must either produce evidence negating an essential

9   element of the nonmoving party's claim or defense or show that the nonmoving party does not

10  have enough evidence of an essential element to carry its ultimate burden of persuasion at trial."

11  *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000).  Once the

12  moving party satisfies Rule 56's requirements, the burden shifts to the party resisting the motion to

13  "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256.

14  The nonmoving party "may not rely on denials in the pleadings but must produce specific

15  evidence, through affidavits or admissible discovery material, to show that the dispute exists,"

16  *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply

17  show that there is some metaphysical doubt as to the material facts." *Bank of America v. Orr*, 285

18  F.3d 764, 783 (9th Cir. 2002) (internal citations omitted).  "The mere existence of a scintilla of

19  evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252.

20  **II.    Analysis**

21          **A.    Defamation**

22          Plaintiffs' first cause of action is for defamation against Albertson's.  In order to

23  establish a prima facie case of defamation, a plaintiff must prove: (1) a false and defamatory

24  statement by defendant concerning the plaintiff; (2) an unprivileged publication to a third person;

25  (3) fault, amounting to at least negligence; and (4) actual or presumed damages. *Simpson v. Mars*

26  *Inc.*, 929 P.2d 966, 967 (Nev. 1997).  Statements made to law enforcement before the initiation of

AO 72
(Rev. 8/82)

1    criminal proceedings enjoy a qualified privilege.  *Pope v. Motel 6*, 114 P.3d 277, 283 (Nev. 2005).

2    Under the qualified privilege, a plaintiff must prove by a preponderance of the evidence that the

3    defendant published the alleged defamatory statement with actual malice.  *Id*.  at 283-84.  A

4    plaintiff shows actual malice by demonstrating that a defendant published the statement with

5    knowledge that it was false or with reckless disregard for its veracity.  *Id*.  at 284.

6              Plaintiffs allege Albertson's engaged in defamation by falsely accusing Pitti of

7    attempting to fill a fraudulent prescription.  However, Albertson's false accusation was made

8    without malice, and is therefore privileged.  The day before the alleged events in the case took

9    place, Emily Espanol—head pharmacist at the Albertson's pharmacy—correctly identified a

10   fraudulent prescription that had been dropped off by an unrelated third-party.  (#38, Albertson's

11   Motion for Summary Judgment, Ex. B, Espanol Depo., 128:3-24).  When Pitti visited the

12   pharmacy to fill her prescription, Mary Chris—a high school intern working at the

13   pharmacy—incorrectly informed Espanol that it was Pitti who had dropped off the fraudulent

14   prescription the day before.  (*Id*. at 170:1-17).  Espanol then pulled out the fraudulent prescription,

15   showed it to Chris, and asked Chris if she was sure, at which point Chris approached Pitti, asked

16   for her name, and returned to Espanol confirming that she was sure.  (*Id*.).  Accordingly, when

17   Espanol called the police she did so with a good faith belief that Pitti was attempting to fill the

18   fraudulent prescription from the day before.

19             Plaintiffs' evidence falls short of demonstrating that Espanol was reckless in relying

20   on Chris, a high school intern, to formulate her belief.  For example, there is no evidence that

21   Chris is incompetent, unreliable, or that she or other interns had made mistakes of any significance

22   in the past.  To the contrary, Espanol testified that as a pharmacist she "always rel[ies] on our

23   help," speaking of her reliance on Chris.  (*Id*. at 170:18-21).  In addition, the fact that Espanol did

24   not follow pharmacy policy for fraudulent prescriptions may show that she was irresponsible, but

25   that irresponsibility doesn't amount to malice.  Nor does the violation of a company policy

26   necessarily equate to a violation of the law.  Finally, Espanol's admission that she made a mistake

AO 72
(Rev. 8/82)

1    in calling the police on Pitti, (*id.,* at 162:20-25), is not sufficient to show malice.  The mere fact

2    that someone makes a mistake does not necessarily mean that the mistake was made with reckless

3    disregard for the truth.  Therefore, Plaintiffs fail to provide enough evidence to carry their ultimate

4    burden of persuasion at trial.  *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102

5    (9th Cir. 2000).  Accordingly, the Court grants Albertson's motion with respect to Plaintiffs' claim

6    for defamation.

7              **B.        Intentional Infliction of Emotional Distress**

8                   Plaintiffs' second cause of action is for intentional infliction of emotional distress

9    (IIED) against Albertson's.  In order to establish a prima facie case of IIED, a plaintiff must prove

10   (1) defendant's conduct was extreme or outrageous with either the intention of, or reckless

11   disregard for, causing emotional distress to plaintiff, and (2) plaintiff suffered severe or extreme

12   emotional distress as the actual or proximate result of defendant's conduct.

13                  As Espanol's conduct did not amount to recklessness, it would be odd for the Court

14   to find that it was extreme or outrageous.  Additionally, there is no evidence demonstrating that

15   Espanol acted with the intent or reckless disregard for causing Pitti emotional distress.  Although

16   being accused of a crime, even one for which someone *is* responsible, would cause most of us

17   some emotional distress, Espanol's intent was to assist in the investigation of a potential crime, not

18   cause Pitti emotional distress.

19                  More importantly, however, Plaintiffs provide no medical evidence relating to

20   Pitti's alleged emotional distress.  They only provide Pitti's deposition testimony in which she

21   states that "if feels like it just happened yesterday.  I can't stop crying."  (#42, Plaintiffs'

22   Opposition, Ex. 4, Pitti Depo., 61:5-19).  She further states that she just wants to stay in her home.

23   (*Id.*).  However, general emotional discomfort, *Barmettler v. Reno Air, Inc.*, 956 P.2d 1382, 1387

24   (Nev. 1998), or even depression for a period of time following the event, *Miller v. Jones*, 970 P.2d

25   571, 577 (Nev. 1998), is insufficient to establish severe emotional distress, especially where no

26   ///

AO 72
(Rev. 8/82)

1    objectively verifiable indicia of these alleged conditions exists. *Jones*, 970 P.2d at 577.

2    Therefore, the Court grants Albertson's motion as to Plaintiffs' IIED claim.

3          **C.**     **Negligent Infliction of Emotional Distress**

4          Plaintiffs' third cause of action is for negligent infliction of emotional distress

5    against Albertson's. To bring an NIED claim, a *bystander* must have been "located near the

6    scene," "emotionally injured by the contemporaneous sensory observance" of the acts, and

7    "closely related to the victim." *Grotts v. Zahner*, 989 P.2d 415, 416 (Nev. 1999) (emphasis

8    added). As this Court has repeatedly held, direct victims may not bring NIED claims as they are

9    not bystanders. *See, e.g.*, *Kennedy v. Carriage Cemetery Serv., Inc.*, 727 F. Supp. 2d 925, 934–35

10    (D. Nev. 2010).

11          Plaintiffs allege that Pitti suffered emotional distress as a result of Albertson's

12    negligent conduct. Plaintiffs, as well as many parties that come before the Court, confuse

13    negligence claims with parasitic emotional distress damages with claims for NIED. The two

14    causes of action, negligence with emotional distress damages and NIED, are simply not the same.

15    Many attorney's have misinterpreted the Nevada Supreme Court's decision in *Shoen v. Amerco,*

16    *Inc.*, 896 P.2d 469, 477 (Nev. 1995), wherein the court held that direct victims of negligence could

17    obtain emotional distress damages. This decision did not do away with the bystander requirement

18    for NIED claims, it merely held that plaintiffs pleading negligence may obtain emotional distress

19    damages just as NIED claimants may. *Id.*; *see also Carriage Cemetery*, 727 F. Supp. 2d at 934–35

20    (explaining the Nevada Supreme Court's holding in *Shoen*). Therefore, as Pitti was a direct victim

21    of Albertson's alleged negligence this claim cannot stand.

22          **D.**     **False Imprisonment**

23          Plaintiffs' sixth cause of action is for false imprisonment against Albertson's. In

24    order to state a prima facie claim for false imprisonment, plaintiff must show (1) defendant

25    intended to confine plaintiff within boundaries fixed by defendant, (2) defendant's act directly or

26

AO 72
(Rev. 8/82)

1   indirectly results in such a confinement of plaintiff, and (3) plaintiff is conscious of the

2   confinement or is harmed by it.  *Hernandez v. City of Reno*, 634 P.2d 668, 671 (Nev. 1981).

3          Plaintiffs' false imprisonment claim fails.  There is no evidence that Espanol or

4   Chris actually physically held Pitti or told her should could not leave the pharmacy.  Albertson's

5   did not impede Pitti's movement in any way.  She was free to leave whenever she so desired.  All

6   Espanol did was to inform Pitti that her prescription was being filled, thus making it so that Pitti

7   would wait around.  Further, Pitti was not aware that she was being confined and nor has she

8   presented sufficient evidence demonstrating she was harmed by any alleged confinement.

9   Therefore, Plaintiffs provide insufficient evidence to support their false imprisonment claim and,

10  as such, the Court grants Albertson's motion in that regard.

11         **E.      Negligence**

12         Plaintiffs' ninth cause of action is for negligence against Albertson's.  To bring a

13  negligence claim, a plaintiff must prove (1) defendant owed a duty of care to plaintiff, (2)

14  defendant breached that duty, (3) the breach was the legal cause of plaintiff's injuries, and (4)

15  plaintiff suffered damages.  *Scialabba v. Brandise Construction Co.*, 921 P.2d 928, 968 (Nev.

16  1996).

17         Plaintiffs' allege that Albertson's was negligent by falsely accusing Pitti of

18  attempting to fill a fraudulent prescription, and by keeping Pitti in the pharmacy under those false

19  pretenses.  They allege, as damages, the subsequent confinement by the police and the alleged

20  physical damages that resulted from that confinement, specifically, that the police hurt her arm

21  when they put it behind her back in order to escort her to a private room for questioning.  (#42,

22  Plaintiffs' Opposition, Ex. 4, Pitti Depo., 57:2-11).  However, Pitti's doctor testified in his

23  deposition that the injuries to Pitti's arm were not the result of a single event, but something

24  chronic in nature that probably took months or even years to develop.  (#38, Albertson's Motion

25  for Summary Judgment, Ex. H, Dr. Michael Miao Depo., 10:21-25, 11:1-14).  Plaintiffs point to

26  *///*

AO 72
(Rev. 8/82)

1   no evidence that would refute this testimony.  Therefore, the evidence provided demonstrates that

2   Pitti did not suffer damages as a result of this incident, either emotional or physical.

3        However, even if Pitti did suffer damages, the only injury she alleges, the hurt arm,

4   was a result of the police officer's conduct, not Albertson's.  Therefore, the officer's alleged acts

5   were intentional, intervening acts and were not foreseeable.  Consequently, the evidence

6   demonstrates that Pitti's alleged injuries were not caused by Albertson's.  Therefore, for the

7   foregoing reasons, the Court grants Albertson's motion as to Plaintiffs' negligence claim.

8        **F.   Negligent Training and Supervision**

9        Plaintiffs' tenth cause of action is for negligent training and supervision against

10  Albertson's.  An employer "has a duty to use reasonable care in the training, supervision, and

11  retention of his or her employees to make sure that the employees are fit for their positions." *Hall*

12  *v. SSF, Inc.*, 930 P.2d 94, 99 (Nev. 1996).

13       The evidence demonstrates that Espanol was trained at the time she was hired as a

14  pharmacist, (#45, Reply, Ex. A, Espanol Depo., 38:18-21), that Espanol had continuing education

15  requirements, (*id*. at 42:1-16; *see also*, #42, Opposition, Ex. 3, Training Programs, Technician

16  Training and Utilization), and that the pharmacy had a policy for employees to follow in cases of

17  suspected forged prescriptions, (#42, Opposition, Ex. 2, Suspected Prescription Forgery Protocol).

18  This evidence, together with the fact that Plaintiffs' point to no evidence demonstrating that this

19  training did not take place,[1] is adequate to demonstrate there is no genuine dispute of material fact

20  for trial on this claim.  Accordingly, the Court grants Albertson's motion as to this claim.

21  ///

22

23       [1] Plaintiffs cite to Espanol deposition testimony wherein she merely states that she "does not recall"
    whether she received training on the proper procedure for cases of fraudulent prescription.  This is not evidence
24  that Espanol was not in fact trained on those procedures.  Espanol also admits that at the time she took over as
    head pharmacist she was not given training in the procedure for dealing with fraudulent prescriptions, (#42,
25  Opposition, Ex. 1, Espanol Depo., 94:10-13).  However, this evidence does not speak to Espanol's training on
    this procedure prior to becoming head pharmacist.  In short, these statements by Espanol are far too vague to
26  demonstrate that Plaintiffs' can carry their burden of persuasion at trial on this issue.

AO 72
(Rev. 8/82)

**G.    Negligent Hiring**

Plaintiffs' twelfth cause of action is for negligent hiring against Albertson's.  "The tort of negligent hiring imposes a general duty on the employer to conduct a reasonable background check on a potential employee to ensure that the employee is fit for the position.  An employer breaches this duty when it hires an employee even though the employer knew, or should have known, of that employee's dangerous propensities."  *Hall v. SSF, Inc.*, 930 P.2d 94, 98 (Nev. 1996) (citations omitted).

Plaintiffs do not seem to contest Albertson's request for summary judgment on this claim.  Even if they do, they fail to point to the existence of even a scintilla of evidence demonstrating that Albertson's knew, or should have know, of Espanol or Chris' alleged incompetencies at the time they were hired.  Therefore, the Court grants Albertson's motion as to this claim.

**H.    Loss of Consortium**

Plaintiffs concede that the loss of consortium cause of action should be dismissed because Plaintiff Gutierrez is not married to Pitti.

**CONCLUSION**

Accordingly, and for good cause appearing,

IT IS HEREBY ORDERED that New Albertson's Motion for Summary Judgment (#38) is GRANTED.  The Court instructs the Clerk of Court to close the case.

Dated: May 29, 2012

_____
**ROGER L. HUNT**
**United States District Judge**

AO 72
(Rev. 8/82)